USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/18/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN A. MATTERA,

           Petitioner,

-v-

UNITED STATES OF AMERICA,

           Respondent.

UNITED STATES OF AMERICA

-v-

JOHN A. MATTERA,

           Defendant.

No. 16-cv-783 (RJS)

No. 12-cr-127 (RJS)

OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

    Petitioner John Mattera ("Mattera" or "Petitioner"), proceeding *pro se*, brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in connection with his conviction and sentence for securities fraud, wire fraud, conspiracy to commit securities fraud and wire fraud, and money laundering. (Doc. No. 63[1] ("Petition"); *see also* Doc. No. 87 ("Amended Petition" or "Am. Pet.").) For the reasons set forth below, the Amended Petition is DENIED.

---

[1] Unless otherwise noted, all document citations refer to the docket in the criminal case, No. 12-cr-127 (RJS).

## I. BACKGROUND[2]

From late 2009 through late 2011, Petitioner participated in a scheme to defraud investors and misappropriate investor money. (PSR ¶¶ 13–47.) Specifically, Petitioner and his co-conspirators falsely represented to investors that Praetorian Global Fund Limited ("Praetorian"), a professional mutual fund registered or in the process of being registered in the British Virgin Islands, held stock in then-private companies through various special-purpose vehicles. (*Id.* ¶¶ 13, 19.) Petitioner himself claimed to own more than one million shares of Facebook, Inc. stock and one million shares of Groupon, Inc. stock. (*Id.* ¶ 29.) Petitioner and his co-conspirators, including the Managing Director of Praetorian (who later became a cooperating witness) (*id.* ¶ 22), led investors to believe that (1) they could invest in the special-purpose vehicles and that their funds would be held in escrow until a particular initial public offering was completed; (2) upon completion of the offering, investors would receive an ownership interest in the special-purpose vehicle in which the shares were held; and (3) they could revoke their investments at any time before an initial public offering occurred (*id.* ¶¶ 20, 26). In fact, Petitioner transferred more than $11 million in funds that Praetorian received from investors from the escrow accounts to other accounts that he controlled, and then spent nearly $4 million of those funds on lavish personal expenses, including expensive jewelry, interior decorating, and luxury cars. (*Id.* ¶ 20.) Throughout the conspiracy, Petitioner controlled Praetorian and the special-purpose vehicles and made day-to-day management decisions for Praetorian. (*Id.* ¶ 15.) Although Petitioner did not go to trial, the Presentence Investigation Report reflects that the government's evidence at trial would

---

[2] The following facts are taken from the Presentence Investigation Report ("PSR"), *see, e.g., United States v. Albarran*, 943 F.3d 106, 110 n.2 (2d Cir. 2019); *Foster v. United States*, No. 07-cv-9269 (NRB), 2008 WL 2796664, at *1 n.2 (S.D.N.Y. July 16, 2008), with all inferences drawn in favor of the government, *see United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997). In issuing its ruling, the Court has also considered the Amended Petition (Doc. No. 87), the government's memorandum in opposition (Doc. No. 97), and Petitioner's reply (No. 16-cv-783, Doc. No. 55).

have established these facts through cooperating-witness testimony from the Managing Director of Praetorian, corroborated by text messages and e-mails between Petitioner, the cooperating witness, and investors, as well as bank records and audio recordings. (PSR ¶¶ 13–47.)

On February 8, 2012, a federal grand jury returned an indictment charging Petitioner with securities fraud, wire fraud, conspiracy to commit securities fraud and wire fraud, and money laundering. (Doc. No. 11.) On October 2, 2012, Petitioner pleaded guilty to all four counts. (Am. Pet. Ex. 21.) While the Court accepted Petitioner's plea on the first three counts at the plea hearing, the Court reserved decision on the money laundering count in light of Petitioner's initial reluctance to admit that (1) he knew the funds he transferred to a bank account in Switzerland were obtained unlawfully, and (2) he transferred the funds in order to conceal their unlawful source. (*Id.* at 58–59.) Nevertheless, Petitioner ultimately clarified that he knew that the funds he transferred were fraudulently obtained (*i.e.*, that he misled investors in obtaining the funds), and that he transferred these illicit funds to an overseas account that he set up in order to avoid government scrutiny. (*Id.* at 56–58.) At the plea hearing, the government also stated that if the case went to trial, it would introduce specific communications between Petitioner and his co-conspirator showing that Petitioner knew that investors were being misled as to the nature of the funds being held in escrow (*id.* at 61–63); when asked if he disagreed with anything the prosecutor said in summarizing the evidence of his guilt, Petitioner said "No" (*id.* at 63). Thus, on June 25, 2013, the Court accepted Petitioners' guilty plea on Count Four and sentenced Petitioner to terms of 60 months' imprisonment for the conspiracy conviction and 132 months' imprisonment for each of the remaining convictions, all to run concurrently. (Doc. No. 47.) Pursuant to Petitioner's plea agreement with the government, he waived his right to appeal or otherwise challenge any sentence below the stipulated Guidelines range of 121 to 151 months. (Doc. No. 66-1 at 5–7.)

3

Although Petitioner never filed an appeal, he filed this Petition on February 2, 2016 (Doc. No. 63); the government filed its opposition on April 11, 2016 (Doc. No. 66). After Petitioner filed several additional motions, including a motion to compel the government to produce exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (Doc. No. 76) and a motion to vacate the money laundering conviction (Doc. No. 79), the Court ordered Petitioner to file a single amended petition for habeas corpus relief (Doc. No. 80). Petitioner filed the Amended Petition on November 29, 2017 (Doc. No. 87), and the Amended Petition was fully briefed on July 20, 2018 (*see* No. 16-cv-783, Doc. No. 55).

## II. Legal Standard

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct a sentence that was "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks and citation omitted).

## III. Discussion

In the Amended Petition, Mattera argues that (1) he received ineffective assistance of counsel in connection with his guilty plea and sentencing; (2) the government failed to produce

4

exculpatory *Brady* material in violation of his due process rights; and (3) his plea agreement was null and void because of actions taken by counsel and the government. (Am. Pet. 2–3, 13–18, 24–26.) However, the Court need not address the merits of Petitioner's arguments because, even assuming the Amended Petition relates back to February 2, 2016 – the date of the initial Petition – it is barred by Section 2255's one-year statute of limitations.

A. Statute of Limitations

A one-year statute of limitations applies to petitions for habeas corpus under Section 2255. 28 U.S.C. § 2255(f). Generally, the statute of limitations runs from the date on which the judgment of conviction becomes final. *Id.* § 2255(f)(1). However, under certain circumstances – such as when the government unconstitutionally creates an "impediment" that prevents a petitioner from making his motion, *id.* § 2255(f)(2), or when "the facts supporting the claim or claims presented could [not] have been discovered through the exercise of due diligence," *id.* § 2255(f)(4) – the statute of limitations can be tolled.

Here, Petitioner first argues that the government's failure to disclose alleged *Brady* material constituted an impediment created by governmental action for purposes of Section 2255(f)(2), thus tolling the statute of limitations until the date on which the impediment was removed. (Am. Pet. 24–26.) Specifically, Petitioner claims that the government failed to produce text messages, phone numbers, and emails from a cooperating witness, notwithstanding "several requests" by Petitioner and his counsel for the production of exculpatory materials.[3] (*Id.* at 25.)

As an initial matter, Petitioner expressly "waive[d] any and all right . . . to attack his conviction, either on direct appeal or collaterally, on the ground that the [g]overnment ha[d] failed to produce . . . exculpatory material pursuant to *Brady* . . . other than information establishing [his]

---

[3] Although Petitioner does not specify the dates of these requests, Petitioner made at least one written request for exculpatory materials through a motion filed on July 31, 2012. (*See* Doc. Nos. 23, 25.)

5

factual innocence." (No. 16-cv-783, Doc. No. 48-1 at 7.) "Such waivers are enforceable where, as here, the defendant entered into the plea agreement knowingly and voluntarily." *Tremblay v. United States*, No. 05-cr-0783 (JFK), 2009 WL 1055007, at *8 (S.D.N.Y. Apr. 20, 2009). Mattera nonetheless argues that his plea agreement was "unintelligent" because the government failed to disclose, before entering into the plea agreement, that it was using a cooperating witness as part of an investigation "led by [g]overnment paid employees." (Am. Pet. 2–3.) But the government is generally not required to disclose the identity of its informants before a guilty plea. *See United States v. Ruiz*, 536 U.S. 622, 632–33 (2002); *see also Ortega v. United States*, 897 F. Supp. 771, 780 (S.D.N.Y. 1995) (disclosure not required unless informant's identity is "material" or "essential" to the defense). Moreover, Petitioner does not identify any suppression of information, relating to the cooperating witness or otherwise, that would render his agreement to plead guilty unintelligent. Having presided over Petitioner's change-of-plea hearing – which included an extensive allocution as well as a signed Advice of Rights form (No. 16-cv-783, Doc. No. 12-2 (Transcript of Plea Hearing); *see also* No. 16-cv-783, Doc. No. 48-2 at 10–17) – the Court finds that Petitioner's agreement to plead guilty and waive his rights was intelligent, knowing, and voluntary. Thus, the *Brady* waiver in the plea agreement is enforceable here.

Furthermore, although Petitioner argues in conclusory fashion that he "would no doubt have had a much more favorable [out]come at trial, and may have avoided incarceration" if the government had disclosed the evidence in question (Am. Pet. 25), Petitioner does not explain how such evidence constitutes material exculpatory information, let alone how it establishes his "factual innocence" such that his claim falls within the waiver's exception. In addition, even if Petitioner's vague *Brady* argument were not waived, it would fail to satisfy the statute-of-limitations exception in Section 2255(f)(2). *See, e.g., Wong v. United States*, 537 F. Supp. 2d 436, 441 (E.D.N.Y. 2007)

("Petitioner's mere allegation that the [g]overnment has suppressed exculpatory material alone cannot possibly satisfy the exception articulated in [S]ection 2255(f)(2). Otherwise, the exception would 'swallow the rule,' permitting virtually anyone who mentions *Brady* to file after the one-year limitations period."). Finally, even if Petitioner's *Brady* argument were timely and not waived, the Court would reject it on the merits, because, again, there is nothing to suggest that the undisclosed information relating to a government witness was exculpatory and material for purposes of *Brady*. In particular, Petitioner does not explain how the undisclosed information would have contradicted or cast doubt upon the inculpatory information provided by the cooperating witness, which was corroborated by text message and e-mail communications, audio recordings, and other forms of evidence. Indeed, as noted above, Petitioner acknowledged in open court that he knew that he had misled investors and, with respect to the money laundering count, that he knowingly transferred proceeds from the fraudulent scheme to a bank account he set up in Switzerland in order to shield the funds from the prying eyes of the government.

Petitioner also argues that he is entitled to equitable tolling under Section 2255(f)(4) because "the conditions of imprisonment at Pensacola" – including waking up at 4:30 a.m. Monday through Friday to perform required "hard labor" and returning between 3:00 and 4:00 p.m. to eat, wash laundry, shower, and go to bed before "start[ing] it all over the next day" – resulted in his having "very little time to focus" on his Petition. (Am. Pet. Ex. 1.) Equitable tolling, however, applies only in "rare and exceptional circumstances," *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003) (citation omitted), and "[a] litigant seeking equitable tolling must show both that he 'diligently' pursued his rights and that 'some extraordinary circumstance . . . prevented timely filing,'" *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Here, Petitioner's argument regarding the conditions of his

imprisonment do not rise to the level of extraordinary circumstances justifying a delay of more than two and a half years in filing his habeas petition. *See, e.g., United States v. Rana*, No. 10-cr-856-3 (DLC), 2013 WL 5658759, at *2 (S.D.N.Y. Oct. 16, 2013) (finding that a petitioner's "delay of eight to nine months following discovery of his purported right of action demonstrates that he was not pursuing his claim 'diligently'"); *see also Morton v. Ercole*, No. 08-cr-0252 (RJS) (FM), 2010 WL 890036, at *2 (S.D.N.Y. Mar. 10, 2010) (explaining that "[c]ourts generally have found that periods of delay lasting for more than a year do not exhibit due diligence," and collecting cases).

Thus, the statute of limitations began to run on the date on which the judgment of conviction became final. Because Petitioner did not directly appeal his sentence and conviction, that date was September 9, 2013 – fourteen days after the Court filed the amended judgment of conviction on August 26, 2013. *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) ("[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."); Fed. R. App. P. 4(b). Accordingly, even assuming that the Amended Petition relates back to the date of the original Petition, which was filed on February 2, 2016, it is barred by the statute of limitations.

B. Actual Innocence

Of course, a petitioner may proceed with an otherwise time-barred habeas petition where he can establish that he is actually innocent of the offenses for which he was convicted. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To do so, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks and citation omitted). That is, a petitioner must demonstrate "factual innocence, not mere legal insufficiency."

8

*Id.* Moreover, a petitioner who pleaded guilty faces "the weighty presumptions favoring the veracity of a defendant's sworn plea of guilty." *Doe v. Menefee*, 391 F.3d 147, 173 (2d Cir. 2004).

Here, Petitioner argues only that he is actually innocent of money laundering – not the other three counts to which he pleaded guilty. (Am. Pet. 19–23.) But Petitioner does not present any new evidence to suggest that he is actually innocent of the crimes to which he pleaded guilty, including the money laundering count, and, as discussed above, the record of Petitioner's guilty plea reflects that it was intelligent, knowing, and voluntary, and supported by an independent basis in fact for each of the elements of the counts of conviction. While it is true that Petitioner initially stated at the plea hearing that he did not know that the laundered proceeds were obtained illegally at the time he transferred them (Am. Pet. Ex. 21 at 51), he later clarified that, "at the time of the transfer," he knew that the funds at issue were obtained through an illegal fraud (*id.* at 56), and further stated that he did not disagree with the government's evidence, which included Petitioner's own incriminating text messages in the months leading up to his arrest (*id.* at 61–63). Accordingly, Petitioner's actual innocence argument fails.[4] *See, e.g., United States v. Fernandez*, 734 F. Supp. 599, 603 (S.D.N.Y. 1990) ("Fernandez's current protestations of innocence do not negate his open admission of guilt in court or the factual record supporting that plea."), *aff'd*, 932 F.2d 956 (2d Cir. 1991).

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that the Amended Petition is DENIED. In addition, because Petitioner has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. *See* 28 U.S.C.

---

[4] Even if the Court were to consider the Amended Petition on the merits, it would still fail, since Petitioner's allegations fail to establish any constitutional or jurisdictional error, or "error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bokun*, 73 F.3d at 12 (internal quotation marks and citation omitted).

§ 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and, therefore, Petitioner may not proceed *in forma pauperis*.

The Clerk of Court is respectfully directed to terminate the motion pending at document number 87 in Case No. 12-cr-127, to close Case No. 16-cv-783, and to mail a copy of this Opinion and Order to Petitioner.

SO ORDERED.

Dated:    February 18, 2020
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation